UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------- X
Dr. Victor Serebruany,⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀ :

⠀⠀⠀⠀⠀⠀⠀⠀Plaintiff,⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀ :⠀⠀⠀ Case No.: _____

⠀⠀⠀-against-⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀ :⠀⠀⠀ **COMPLAINT**

E*TRADE⠀⠀FINANCIAL⠀⠀CORPORATION,: ⠀ **DEMAND FOR JURY TRIAL**
RODGER A. LAWSON, MICHAEL A. PIZZI, :
KEVIN T. KABAT, RICHARD J. CARBONE, :
ROBERT CHERSI, JAIME W. ELLERTSON, :
JAMES P. HEALY, JAMES LAM, SHELLEY :
B. LEIBOWITZ, REBECCA SAEGER, ⠀⠀⠀⠀ :
DONNA L. WEAVER, and JOSHUA ⠀⠀⠀⠀⠀ :
WEINREICH,⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀ :
⠀⠀⠀⠀⠀⠀⠀⠀Defendants.⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀ :

--------------------------------------- X

⠀⠀⠀⠀⠀⠀Plaintiff, Dr. Victor Serebruany ("Plaintiff"), by his undersigned attorneys, alleges upon

personal knowledge with respect to himself, and information and belief based upon, *inter alia*, the

investigation of counsel as to all other allegations herein, as follows:

## NATURE OF THE ACTION

⠀⠀⠀⠀⠀⠀1.⠀⠀⠀⠀⠀⠀This is an action brought by Plaintiff against E*TRADE Financial Corporation

Ltd. ("E*TRADE" or the "Company") and the members of the Company's board of directors

(collectively referred to as the "Board" or the "Individual Defendants" and, together with

E*TRADE, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities

Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78n(a) and 78t(a), and SEC Rule 14a-9,

17 C.F.R. § 240.14a-9, in connection with the proposed merger between E*TRADE and Morgan

Stanley (the "Proposed Merger"). Plaintiff also asserts a claim against the Individual Defendants

for breaching their fiduciary duty of candor/disclosure under state law.

⠀⠀⠀⠀⠀⠀2.⠀⠀⠀⠀⠀⠀On February 20, 2020, E*TRADE entered into an Agreement and Plan of Merger

(the "Merger Agreement"), pursuant to which the Company's shareholders will receive 1.0432 shares of Morgan Stanley common stock exchange for each share of E*TRADE common stock they own (the "Merger Consideration").

3.      On April 17, 2020, in order to convince E*TRADE shareholders to vote in favor of the Proposed Merger, Defendants authorized the filing of a materially incomplete and misleading proxy statement/prospectus (the "Proxy") with the Securities and Exchange Commission ("SEC"), in violation of Sections 14(a) and 20(a) of the Exchange Act and in breach of the Individual Defendants' duty of candor/disclosure.

4.      In particular, the Proxy contains materially incomplete and misleading information concerning: (i) financial projections for E*TRADE and Morgan Stanley; and (ii) the valuation analyses performed by E*TRADE's financial advisors, J.P. Morgan Securities LLC ("J.P. Morgan") and Ardea Partners LP ("Ardea"), in support of their fairness opinions.

5.      The special meeting of E*TRADE shareholders to vote on the Proposed Merger is forthcoming (the "Shareholder Vote"). It is imperative that the material information that has been omitted from the Proxy is disclosed prior to the Shareholder Vote so Plaintiff can cast an informed vote and properly exercise his corporate suffrage rights.

6.      For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Defendants for violations of Sections 14(a) and 20(a) of the Exchange Act and breach of the duty of candor/disclosure. Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Merger until the material information discussed herein is disclosed to E*TRADE's shareholders sufficiently in advance of the Shareholder Vote or, in the event the Proposed Merger is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act and breach of the duty of candor/disclosure.

2

## JURISDICTION AND VENUE

7.        This Court has original jurisdiction over this action pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.

8.        The Court has supplemental jurisdiction over the state law claim for breach of the duty of candor/disclosure pursuant to 28 U.S.C. § 1367.

9.        Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over the Defendants by this Court permissible under traditional notions of fair play and substantial justice. "Where a federal statute such as Section 27 of the [Exchange] Act confers nationwide service of process, the question becomes whether the party has sufficient contacts with the United States, not any particular state." *Sec. Inv'r Prot. Corp. v. Vigman* 764 F.2d 1309, 1305 (9th Cir. 1985). "[S]o long as a defendant has minimum contacts with the United States, Section of the Act confers personal jurisdiction over the defendant in any federal district court." *Id.* At 1316

10.        Venue is proper in this District under Section 27 of the Exchange Act and 28 U.S.C. § 1391, because Defendants are found or are inhabitants or transact business in this District. Indeed, E*TRADE's common stock trades on Nasdaq stock exchange, which is headquartered in this District, E*TRADE hired J.P. Morgan as a financial advisor, Skadden, Arps, Slate, Meagher & Flom LLP as a legal advisor, and Innisfree M&A Incorporated as a proxy solicitor for the purposes of the Proposed Merger, all of which are also located in this District, and the closing of the Proposed Merger is scheduled to occur in this District rendering venue in this District

appropriate. *See, e.g., United States v. Svoboda*, 347 F.3d 471, 484 n.13 (2d Cir. 2003) (collecting cases).

## PARTIES

11.       Plaintiff is, and at all relevant times has been, a holder of E*TRADE common stock.

12.       Defendant E*TRADE provides financial services including brokerage and banking products and services to traders, investors, stock plan administrators and participants, and registered investment advisers. The Company's common stock trades on the Nasdaq stock exchange under the ticker symbol "ETFC".

13.       Individual Defendant Rodger A. Lawson has served as a director of the Company since February 2012, and as Chair of the Board since May 2013.

14.       Individual Defendant Michael A. Pizzi has been Chief Executive Officer ("CEO") and a director of the Company since August 2019.

15.       Individual Defendant Kevin T. Kabat has been Lead Independent Director of the Company since September 2016 and a director of the Company since June 2016.

16.       Individual Defendant Richard J. Carbone has been a director of the Company since August 2013.

17.       Individual Defendant Robert Chersi has been a director of the Company since January 2019.

18.       Individual Defendant Jaime W. Ellertson has been a director of the Company since May 2019.

19.       Individual Defendant James P. Healy has been a director of the Company since January 2015.

4

20.     Individual Defendant James Lam has been a director of the Company since November 2012.

21.     Individual Defendant Shelley B. Leibowitz has been a director of the Company since May 2013.

22.     Individual Defendant Rebecca Saeger has been a director of the Company since February 2012.

23.     Individual Defendant Donna L. Weaver has been a director of the Company since April 2003.

24.     Individual Defendant Joshua Weinreich has been a director of the Company since 2018.

25.     The Individual Defendants referred to in ¶¶ 12-24 are collectively referred to herein as the "Individual Defendants" and/or the "Board", and together with E*TRADE they are referred to herein as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### I.     Background and the Proposed Merger

26.     E*TRADE is a financial services company that provides brokerage and related products and services. The Company focuses on delivering its digital solutions for traders, investors, advisors, and stock plan administrators and participants. It provides services to customers through its digital platforms and network of industry-licensed customer service representatives and financial consultants, over the phone, by email and online via two national financial centers and in-person at approximately 30 regional financial centers across the United States. The Company operates its federally chartered savings banks for the purpose of deposits generated through its brokerage business.

5

27.     Morgan Stanley is a financial holding company whose segments include Institutional Securities, Wealth Management and Investment Management. The Institutional Securities business segment provides investment banking, sales and trading, and other services to corporations, governments, financial institutions and high-to-ultra high net worth clients. The Wealth Management business segment provides an array of financial services and solutions to individual investors and small-to-medium sized businesses and institutions covering brokerage and investment advisory services, market-making activities in fixed income securities, financial and wealth planning services, annuity and insurance products, credit and other lending products, banking and retirement plan services. The Investment Management business segment provides a range of investment strategies and products.

28.     On February 20, 2020, E*TRADE issued a press release announcing the Proposed Merger, which states in relevant part:

### MORGAN STANLEY TO ACQUIRE E*TRADE, CREATING A LEADER IN ALL MAJOR WEALTH MANAGEMENT CHANNELS

• **Combined platforms will have $3.1Tn client assets, 8.2MM retail client relationships and accounts, and 4.6MM stock plan participants**

• **Combination increases Wealth Management scale, fills product and services gaps through complementary offerings, and enhances digital capabilities; positions Morgan Stanley as a top player across all three channels: Financial Advisory, Workplace, and Self-Directed**

• **Significant cost and funding synergies will result in stronger financial performance and shareholder value creation**

• **Combination accelerates Morgan Stanley's transition to a more balance sheet light business mix and more durable sources of revenue**

NEW YORK & ARLINGTON, Va.--(BUSINESS WIRE)--Morgan Stanley (NYSE: MS) and E*TRADE Financial Corporation (NASDAQ: ETFC) have entered into a definitive agreement under which Morgan Stanley will acquire E*TRADE, a leading financial services company and pioneer in the online brokerage industry, in an all-stock transaction valued at approximately $13 billion.

6

Under the terms of the agreement, E*TRADE stockholders will receive 1.0432 Morgan Stanley shares for each E*TRADE share, which represents per share consideration of $58.74 based on the closing price of Morgan Stanley common stock on February 19, 2020.

The combination will significantly increase the scale and breadth of Morgan Stanley's Wealth Management franchise, and positions Morgan Stanley to be an industry leader in Wealth Management across all channels and wealth segments. E*TRADE has over 5.2 million client accounts with over $360 billion of retail client assets, adding to Morgan Stanley's existing 3 million client relationships and $2.7 trillion of client assets. Morgan Stanley's full-service, advisor-driven model coupled with E*TRADE's direct-to-consumer and digital capabilities, will allow the combined business to have best-in-class product and service offerings to support the full spectrum of wealth.

"E*TRADE represents an extraordinary growth opportunity for our Wealth Management business and a leap forward in our Wealth Management strategy. The combination adds an iconic brand in the direct-to-consumer channel to our leading advisor-driven model, while also creating a premier Workplace Wealth provider for corporations and their employees. E*TRADE's products, innovation in technology, and established brand will help position Morgan Stanley as a top player across all three channels: Financial Advisory, Self-Directed, and Workplace," said James Gorman, Chairman and CEO of Morgan Stanley. "In addition, this continues the decade-long transition of our Firm to a more balance sheet light business mix, emphasizing more durable sources of revenue."

"Finally, I am delighted that Mike Pizzi, CEO of E*TRADE, will be joining Morgan Stanley. Mike will continue to run the E*TRADE business within the Morgan Stanley franchise and lead the ongoing integration effort. Mike will report to me and will join the Morgan Stanley Operating and Management Committees. In addition, we will invite one of E*TRADE's independent directors to join our Board. We look forward to welcoming the infusion of management and technology talent that E*TRADE will bring to Morgan Stanley."

"Since we created the digital brokerage category nearly 40 years ago, E*TRADE has consistently disrupted the status quo and delivered cutting-edge tools and services to investors, traders, and stock plan administrators," said Mike Pizzi, Chief Executive Officer of E*TRADE. "By joining Morgan Stanley, we will be able to take our combined offering to the next level and deliver an even more comprehensive suite of wealth management capabilities. Bringing E*TRADE's brand and offerings under the Morgan Stanley umbrella creates a truly exciting wealth management value proposition and enables our collective team to serve a far wider spectrum of clients."

The transaction will create a leading player in Workplace Wealth, combining E*TRADE's leading U.S. stock plan business with Shareworks by Morgan Stanley,

a top provider of public stock plan administration and private cap table management solutions. This combination will enable Morgan Stanley to accelerate initiatives aimed at enhancing the workplace offering through online brokerage and digital banking capabilities, providing a significantly enhanced client experience.

E*TRADE has been a pioneer in the digital brokerage and banking space for nearly 40 years and is an iconic brand. E*TRADE's hallmarked, consumer-facing technology platforms will complement Morgan Stanley's leading advisor-facing technology. E*TRADE also provides a full suite of digital banking services, including direct integration with brokerage accounts, checking and high-yield savings accounts, significantly accelerating Morgan Stanley's digital banking efforts. The transaction adds approximately $56 billion of low-cost deposits, which will provide significant funding benefits to Morgan Stanley.

Importantly, the acquisition marks a continuation of Morgan Stanley's decade-long effort to rebalance the Firm's portfolio of businesses so that a greater percentage of Firm revenues and income are derived from balance sheet light and more durable sources of revenues. Upon integration, the combined Wealth and Investment Management businesses will contribute approximately 57% of the Firm's pre-tax profits, excluding potential synergies, compared to only approximately 26% in 2010.

The transaction provides significant upside potential for shareholders of both Morgan Stanley and E*TRADE. Shareholders from both companies will benefit from potential cost savings estimated at approximately $400 million from maximizing efficiencies of technology infrastructure, optimizing shared corporate services and combining the bank entities, as well as potential funding synergies of approximately $150 million from optimizing E*TRADE's approximate $56 billion of deposits. In addition, Morgan Stanley will have enhanced technology and service capabilities to capture a larger portion of the estimated approximate $7.3 trillion of combined current customer assets held away, which will drive significant revenue opportunities.

Morgan Stanley will be better positioned to generate attractive financial returns through increased scale, improved efficiency, higher margins, stronger returns on tangible common equity, and long-term earnings accretion. Morgan Stanley expects the acquisition to be accretive once fully phased-in estimated cost and funding synergies are realized. Morgan Stanley will maintain its strong capital position, with the Firm's common equity tier 1 ratio estimated to increase by over 30bps at closing. The transaction is expected to increase the Firm's return on tangible common equity by more than 100bps with fully phased-in cost and funding synergies and improve Wealth Management's pre-tax profit margin to over 30%.

The acquisition is subject to customary closing conditions, including regulatory approvals and approval by E*TRADE shareholders, and is expected to close in the fourth quarter of 2020.

29.     The Merger Consideration represents inadequate compensation for E*TRADE

shares. Indeed, E*TRADE has outperformed expectations and announced positive financial results

in consecutive quarters leading up to the Proposed Merger. Moreover, since the announcement of

the Proposed Merger, Morgan Stanley has seen its stock price fall over 28% from $56.31 on

February 19, 2020 to $48.56 as of the close of the market on June 4, 2020. The Proxy Omits Material

Information

30.     On April 17, 2020, Defendants filed the materially incomplete and misleading

Proxy with the SEC. The Individual Defendants were obligated to carefully review the Proxy

before it was filed with the SEC and disseminated to the Company's shareholders to ensure that it

did not contain any material misrepresentations or omissions. However, the Proxy misrepresents

and/or omits material information that is necessary for the Company's shareholders to make an

informed decision in connection with the Proposed Merger.

The Misleadingly Incomplete Financial Projections

31.     First, the Proxy omits critical financial projections for both E*TRADE and

Morgan Stanley, including revenue projections for both companies, dividend projections for both

companies, tangible book value per share for both companies, earnings per share for Morgan

Stanley, the analyst projections which served as the basis for the Morgan Stanley projections, and

the projected synergies for the combined company (the "Omitted Projections"). Defendants elected

to summarize multiple sets of financial projections, but they excised and failed to disclose the

Omitted Projections. By disclosing certain projections in the Proxy and withholding the Omitted

Projections, Defendants render the tables of projections on pages 61-62 of the Proxy materially

incomplete and provide a misleading valuation picture of E*TRADE and Morgan Stanley.

Moreover, both financial advisors used the Omitted Projections in the valuation analyses

20

underlying their fairness opinions. Simply put, Omitted Projections are irreplaceable when it comes to fully, fairly, and properly understanding a company's projections and value.

32.     If a proxy statement discloses financial projections and valuation information, such projections must be complete and accurate. The question here is not the duty to speak, but liability for not having spoken enough. With regard to future events, uncertain figures, and other so-called soft information, a company may choose silence or speech elaborated by the factual basis as then known—but it may not choose half-truths. Accordingly, Defendants have disclosed some of the projections relied upon by the financial advisors and the Board but failed to disclose the Omitted Projections. This omission renders the summary of the projection tables; the financial advisors valuation analyses; and the Company's financial picture in the Proxy misleadingly incomplete.

33.     Second, the Proxy states that in February 2020 E*TRADE decided to revise their financial projections downward based on financial results through December 31, 2019. However, the Proxy fails to explain what or how the Company's market results accounted for this downward adjustment. Indeed, in both Q3 2019 and Q4 2019, the Company exceeded earnings expectations, which would suggest an upward adjustment to the projections—not a downward one. Given the juxtaposition of this statement and the financial results, the omission of any explanation renders such statement misleading.

The Misleadingly Incomplete Summary of J.P. Morgan's and Ardea's Fairness Opinions

34.     Proxy describes the financial advisors' fairness opinions and the various valuation analyses performed in support of their opinions. Defendants concede the materiality of this information in citing the fairness opinion and their valuation analyses among the "material" factors the Board considered in making its recommendation to E*TRADE shareholders. Proxy at 58; *see also* Proxy at 71 ("The foregoing summary of certain material financial analyses does not purport to be a complete description of the analyses or data presented by J.P. Morgan.") and 74 ("the

20

following is a summary of the material financial analyses presented by Ardea to the E*TRADE board of directors in connection with rendering to the E*TRADE board of directors the opinion described above."). However, the summary of these fairness opinions and analyses provided in the Proxy fails to include key inputs and assumptions underlying the analyses. Without this information, as described below, E*TRADE shareholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place the fairness opinions in determining how to vote on the Proposed Merger. *See* Proxy at 66 ("Considering the data set forth below without considering the full narrative description of the financial analyses, including the methodologies and assumptions underlying the analyses, could create a misleading or incomplete view of J.P. Morgan's analyses."). This omitted information, if disclosed, would significantly alter the total mix of information available to E*TRADE's shareholders.

35.     In summarizing the *Dividend Discount* Analyses prepared by J.P. Morgan and Ardea, the Proxy fails to disclose the following key information used in the analyses: (i) the dividend projections that served as the basis for the analysis; (ii) the implied amount of the additional cash distributions E*TRADE would make to its stockholders during each year 2020 through 2029 to achieve a Tier 1 Leverage Ratio of 6.75% (as provided by E*TRADE management); (iii) the implied amount of the additional cash distributions Morgan Stanley would make to its stockholders during each year 2020 through 2029 to achieve a supplementary leverage ratio of 6% (as provided by E*TRADE management); (iv) the inputs and assumptions underlying the various discount rate ranges (including the values of the company-specific WACC/CAPM components); and (v) the actual terminal values calculated for each analysis.

36.     Without the above-omitted information, E*TRADE shareholders are misled as to the reasonableness or reliability of J.P. Morgan's analysis and unable to accurately assess the fairness of the Proposed Merger. This is especially true with respect to the projected dividends for each of E*TRADE and Morgan Stanley. Not only do dividends to shareholders serve as the

20

principal method for calculating the stock price of a company—under sound corporate finance theory the value of the stock is the present value of its future dividends—but they are the central metric for each *Dividend Discount Analysis* and indisputably the key inputs. As such, these material omissions render the summary of the *Dividend Discount* Analyses included in the Proxy misleadingly incomplete.

37.      Next, in summarizing J.P. Morgan's *Public Trading Multiples Analysis*, the Proxy fails to disclose the trading multiples of Charles Schwab Corporation utilized in the analysis. A fair summary of a comparable companies analysis requires the disclosure of the actual multiples for each company used in the analysis. Merely providing the multiple reference range for the target company that a banker calculated without any further information is insufficient, as shareholders are unable to assess whether the banker applied appropriate multiples, or, instead, applied unreasonably low multiples in order to present the Merger Consideration in the most favorable light. Accordingly, the omission of this material information renders the summary of this analyses provided in the Proxy misleading.

38.      Similarly, in summarizing the Aredea's Premia Paid Analysis, the Proxy fails to disclose the identity and value of each premium observed. A fair summary of analysis requires the disclosure of the individual premium for each transaction involved in the analysis. Merely providing quartiles of the premia without further information is insufficient, as shareholders are unable to assess whether the Proxy summarized fairly, or, instead, summarized in order to present the Merger Consideration in the most favorable light. The disclosure here is insufficient and renders the summaries misleadingly incomplete.

39.      Further, in summarizing the *Broker Price Targets* J.P. Morgan reviewed for each company, the Proxy omits the individual price targets observed or the dates of those price targets; instead, only providing a range of the price targets. Given the breadth of the price targets

20

provided, it is unclear if those price targets were summarized fairly or present a skewed version of each company's value. The disclosure here is insufficient and renders the summaries misleadingly incomplete.

40.    Finally, the Proxy fails to disclose why E*TRADE decided it was necessary to retain two separate financial advisors to oversee a deal with minimal bidders and a truncated sales process. Often, when additional bankers are brought in on a potential merger it is to cleanse the conflict of interest faced by an existing financial advisor. Here, J.P. Morgan was E*TRADE's "long-standing financial advisor." However, the Proxy does not disclose what conflict of interest plagued J.P Morgan and required the Company to hire an additional financial advisor and incur an additional $20 million in fees. Information that bears on whether an investment bank faces conflicts of interest is material to shareholders when deciding how to vote on a merger as it is imperative for the shareholders to be able to understand what factors might influence the financial advisor's analytical efforts. A financial advisor's own proprietary financial interest in a Proposed Transaction must be carefully considered in assessing how much credence to give its analysis. Thus, this omission of this information renders the disclosure of the financial advisors' conflicts of interest misleadingly incomplete and calls into question the veracity of their fairness opinions.

41.    In sum, the omission of the above-referenced information renders the Proxy materially incomplete and misleading, in contravention of the Exchange Act and the Individual Defendants' duty of candor/disclosure. Absent disclosure of the foregoing material information prior to the forthcoming Shareholder Vote, Plaintiff will be unable to cast an informed vote regarding the Proposed Merger, and is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## COUNT I
### Against All Defendants for Violations of Section 14(a) of the Exchange Act

42.    Plaintiff incorporates each and every allegation set forth above as if fully set forth

20

herein.

43.     Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

44.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

45.     The omission of information from a proxy will violate Section 14(a) if other SEC regulations specifically require disclosure of the omitted information.

46.     Defendants have issued the Proxy with the intention of soliciting the Company's common shareholders' support for the Proposed Merger. Each of the Individual Defendants reviewed and authorized the dissemination of the Proxy, which fails to provide critical information regarding, amongst other things: (i) financial projections for E*TRADE and Morgan; and (ii) the valuation analyses performed by the financial advisors in support of their fairness opinions.

47.     In so doing, Defendants made misleading statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted

20

information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy, but nonetheless failed to obtain and disclose such information to the Company's shareholders although they could have done so without extraordinary effort.

48.     The Individual Defendants knew or were negligent in not knowing that the Proxy is materially misleading and omits material facts that are necessary to render it not misleading. The Individual Defendants undoubtedly reviewed and relied upon most if not all of the omitted information identified above in connection with their decision to approve and recommend the Proposed Merger; indeed, the Proxy states that the financial advisors reviewed and discussed their financial analyses with the Board, and further states that the Board considered the financial analyses provided them, as well as their fairness opinions and the assumptions made and matters considered in connection therewith. Further, the Individual Defendants were privy to and had knowledge of the financial projections and the details surrounding the process leading up to the signing of the Merger Agreement. The Individual Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Proxy, rendering the sections of the Proxy identified above to be materially incomplete and misleading. Indeed, the Individual Defendants were required to, separately, review the financial advisors' analyses in connection with their receipt of the fairness opinion, question them as to their derivation of fairness, and be particularly attentive to the procedures followed in preparing the Proxy and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

49.     The Individual Defendants were, at the very least, negligent in preparing and reviewing the Proxy. The preparation of a proxy statement by corporate insiders containing

20

materially false or misleading statements or omitting a material fact constitutes negligence. The Individual Defendants were negligent in choosing to omit material information from the Proxy or failing to notice the material omissions in the Proxy upon reviewing it, which they were required to do carefully as the Company's directors. Indeed, the Individual Defendants were intimately involved in the process leading up to the signing of the Merger Agreement and preparation and review of the Company's financial projections.

50.     E*TRADE is also deemed negligent as a result of the Individual Defendants' negligence in preparing and reviewing the Proxy.

51.     The misrepresentations and omissions in the Proxy are material and Plaintiff will be deprived of his right to cast an informed vote on the Proposed Merger if such misrepresentations and omissions are not corrected prior to the special meeting of E*TRADE's shareholders. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II
### Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act

52.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

53.     The Individual Defendants acted as controlling persons of E*TRADE within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of the Company, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and

20

misleading.

54.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

55.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The Proxy contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Merger. They were thus directly involved in preparing this document.

56.     In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

57.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

58.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

59.     Plaintiff has no adequate remedy at law. Only through the exercise of this Court's

20

equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT III
## Against the Individual Defendants for Breach of Their Fiduciary Duty of Candor/Disclosure

60. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

61. By virtue of their role as directors and/or officers of the Company, the Individual Defendants directly owed Plaintiff and all Company shareholders a fiduciary duty of candor/disclosure, which required them to disclose fully and fairly all material information within their control when they seek shareholder action, and to ensure that the Proxy did not omit any material information or contain any materially misleading statements.

62. As alleged herein, the Individual Defendants breached their duty of candor/disclosure by approving or causing the materially deficient Proxy to be disseminated to Plaintiff and the Company's other public shareholders.

63. The misrepresentations and omissions in the Proxy are material, and Plaintiff will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the Shareholder Vote. Where a shareholder has been denied one of the most critical rights he or she possesses—the right to a fully informed vote—the harm suffered is an individual and irreparable harm.

64. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Preliminarily enjoining Defendants and all persons acting in concert with them

20

from proceeding with the special meeting of E*TRADE shareholders to vote on the Proposed

Merger or consummating the Proposed Merger, until the Company discloses the material

information discussed above which has been omitted from the Proxy;

      B.      Directing the Defendants to account to Plaintiff for all damages sustained as a result

of their wrongdoing;

      C.      Awarding Plaintiff the costs and disbursements of this action, including reasonable

attorneys' and expert fees and expenses; and

      D.      Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: June 8, 2020

By: _____
    Lynda J. Grant

**THEGRANTLAWFIRM, PLLC**
521 Fifth Avenue, 17th Floor
New York, NY 10175
Tel: (212) 292-4441
Fax: (212) 292-4442
E-mail: lgrant@grantfirm.com

*Attorneys for Plaintiff*

20